Filed 11/26/13  Marini v. Regenesis Power CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DENNIS MARINI et al., | B239698 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC419175) |
| v. | |
| REGENESIS POWER, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Mel Red Recana, Judge.  Affirmed.

Bradley D. Salter for Plaintiffs and Appellants.

Shapero, Shapero & Hurst, Steven J. Shapero for Respondent, Regenesis Power;

Marcus, Watanabe & Dave and David M. Marcus for Defendants and Respondents,

William Foster and Wallace Williams; Andre, Morris & Buttery, James C. Buttery,

Gordon E. Bosserman and Collette A. Hillier for Respondents, William R. Hearst, II, an

individual, Harvest, LLC.

Plaintiffs Dennis Marini (Marini), Regenesis, Inc. (RI), and Aloha Power Company, LLC (Aloha) (collectively, plaintiffs) appeal from a judgment following a jury verdict in favor of defendants Regenesis Power, LLC (RP), Harvest, LLC (Harvest), Wallace Williams, LLC (WW), William Hearst II (Hearst), and William Foster (Foster) (collectively, defendants). Plaintiffs contend that the trial court should have granted their motion for a new trial because the special verdict was inconsistent, there was jury misconduct, the jury instructions were misleading, and the court erred in denying plaintiffs leave to amend to add Marini to the cause of action for fraud. We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In May 2006, RP was formed to develop and sell solar energy projects. The principal owners of RP were three limited liability companies: Aloha, Harvest and WW. Aloha, in turn, was owned by Marini, Harvest by Hearst, and WW by Foster.

The operating agreement for RP set forth several provisions regarding payments to Aloha and a second company owned by Marini, RI: (1) upon the "commencement of construction of any [] project of the Company, directly or indirectly, in which the Company receives a development fee," RI would be reimbursed "previously incurred expenses of $100,000"; (2) "after the admission of a financial investor" RP would enter into a consulting agreement with Aloha for "the services of Dennis Marini . . . with compensation of $4,000 per month plus health insurance coverage"; and (3) "[u]pon the

---

[1]    The facts that we recite are based on the evidence presented to the jury viewed in the light most favorable to the judgment. (*612 South LLC v. Laconic Limited Partnership* (2010) 184 Cal.App.4th 1270, 1276.)

admission of a financial investor in the Company, which invests in excess of $1,000,000, Aloha shall be paid a commission of 1-1/2% of the amount of the investment."

Hearst provided the principal financial backing for RP;[2] however, the company also attempted to obtain additional financing from outside investors. In 2008, the chief financial officer suggested that converting a portion of Hearst's loans to equity would help attract other investors by eliminating some of the company's debt. Accordingly, the majority of the board of directors voted to issue new shares to Hearst in exchange for the elimination of a portion of his loans. Marini either abstained from the vote or voted against the proposal.[3] Hearst then converted $1,751,135 of his loans to equity, and divided his new shares with Foster because "he didn't want to be the big cheese" and "liked the guy."

In July 2009, Marini accused other RP board members of mishandling company operations, and threatened to sue them. In August 2009, the board of directors voted to remove Marini from the board. The same month, plaintiffs filed this action for breach of the operating agreement, fraud and related causes of action. The complaint alleged that defendants breached the operating agreement by failing to pay plaintiffs money due under the agreement, and that defendants fraudulently induced plaintiffs to "expend time and resources" while denying plaintiffs the benefits of "their agreements."

---

[2]     Hearst, in fact, provided approximately $4,000,000 in loans to RP.

[3]     There was conflicting testimony at trial on this issue.

3

A series of demurrers followed. On September 1, 2010, the court sustained with leave to amend RP's demurrer to the fraud cause of action in the second amended complaint on the grounds that the complaint did not allege "which plaintiff/s is asserting the [cause of action] in violation of CRC 2.112(3)."[4]

Plaintiffs filed a third amended complaint and asserted fraud on behalf of "plaintiffs [Aloha] and [RI]" The fraud cause of action alleged that defendants made a number of false statements to plaintiffs to "induce Plaintiffs to continue to expend time and resources," and that defendants "did not intend to manage the company and compensate Plaintiffs as represented." Specifically, the complaint alleged that defendants (1) failed to reimburse RI for its expenses, (2) refused to pay Marini agreed-upon consulting fees, (3) failed to pay Aloha agreed-upon commissions "upon the admission of financial investors with the Company," (4) refused to "complete and execute employment agreements with Marini," and (5) had taken "steps designed to dilute [Aloha's] percentage interest in the Company, [i]n amounts not properly approved."

At trial, defendants argued that their actions were authorized by the operating agreement. Specifically, they argued that, pursuant to the operating agreement, (1) RI was not reimbursed its $100,000 in expenses because RP never received a "development fee"; (2) RP was not obligated to enter into a consulting agreement for Marini's services because the company never obtained a financial investor after the

---

[4]     California Rules of Court, Rule 2.112 provides that "[e]ach separately stated cause of action, count, or defense must specifically state. . . . (3) The party asserting it if more than one party is represented on the pleading (e.g., 'by plaintiff Jones')."

4

operating agreement was signed; (3) Aloha was never owed a commission because RP never received a financial investment of more than one million dollars (4) there was no obligation to employ Marini; and (5) although the conversion of Hearst's debt into equity resulted in the dilution of every shareholder's stock, including that of Aloha, the governing board was authorized to vote to issue new shares.

At the conclusion of the trial on liability, plaintiffs orally moved to amend the complaint to add Marini to the fraud cause of action.[5] The court denied the motion. The special verdict form submitted to the jury addressed only two causes of action: (1) false promise *by Aloha* as against Hearst, Foster and RP; and (2) breach of fiduciary duty *by Aloha* as against Wallace Williams and Harvest.[6] The verdict form and jury instructions had been typed up to list Marini as the plaintiff for the fraud cause of action, but the judge crossed Marini's name out by hand on these documents and wrote "Aloha Power" above each deletion. No objection was made by plaintiffs' counsel to

---

[5]    Plaintiffs' counsel did not make any argument in support of the motion to amend, but stated only, "I move to amend to allow Mr. Marini to come in on fraud." In response to the court's comment that the operative pleading did not list Marini as a plaintiff to the fraud cause of action, plaintiffs' counsel argued that defendants' counsel had only belatedly discovered that Marini was not a party to that claim. Plaintiffs now argue that the court ruled "without benefit of a hearing or argument, from counsel for the Appellant/Plaintiff." This is essentially true, however, it was plaintiffs' counsel obligation to volunteer an argument in support of the motion and the record shows that the court did not deprive him of an opportunity to do so. Moreover, after RP's demurrer to the fraud cause of action alleged in the *second* amended complaint was sustained, the third amended complaint corrected the previous generic allegation by specifically identifying only Aloha and RI as the plaintiffs. Thus, the issue of fraud was tried to the jury with only these two parties as the plaintiffs.

[6]    Plaintiffs chose not to pursue RI's claim for false promise.

5

such interlineation by the trial court.  Thus, it is clear that the only remaining plaintiff was Aloha.  The breach of contract claims were abandoned.[7]

The verdict form asked the jury to first answer questions about "false promise," and then to answer questions about "fiduciary duty."  At the end of the "fiduciary duty" section, the verdict form unconditionally directed the jury to "go to" the next section.  The following section consisted of "punitive damages" questions which asked whether defendants had "engage[d] in the conduct with malice, oppression, or fraud."  The jury was instructed that "[i]f you decide that [] HEARST['s] [], [] FOSTER's and REGEN[E]SIS POWER, LLC's conduct caused ALOHA POWER, LLC harm, you must decide whether that conduct justifies an award of punitive damages.  At this time, you must decide whether ALOHA POWER, LLC has proved by clear and convincing evidence that [] HEARST [], [] FOSTER and REGEN[E]SIS POWER, LLC engaged in that conduct with malice, oppression, or fraud.  The amount of punitive damages, if any, will be decided later."

The jury returned a verdict in favor of Hearst, Foster and RP on the false promise count, and in favor of Wallace Williams and Harvest on the breach of fiduciary duty count.  However, the jury did not stop there, but proceeded to answer the "punitive

---

[7]     Plaintiffs chose not to pursue the breach of contract cause of action as shown by the trial transcript:
"Mr. Shapero [RP's counsel]:  . . . So there is no breach of contract claim left; is that correct?
"Mr. Marcus [Foster and WW's counsel]:  Ask Doug [plaintiffs' counsel].  That is what he told us.
"Mr. Pettibone [plaintiffs' counsel]:  That is it."

damages" questions. The jury found that Hearst, Foster and RP had "engage[d] in the conduct with malice, oppression, or fraud."

After the verdict was read, counsel for plaintiffs argued that the court should ask the jurors for clarification as to whether they intended to find defendants liable. Counsel for defendants argued that any award of punitive damages must be based on underlying tort liability. The court then addressed the jury, reminding them of the jury instructions: " '[i]f you decide that defendants' conduct caused harm, you must decide whether that conduct justifies an award of punitive damages.' " The court asked the jury to "tell [him] what you understand by this sentence." Various members of the jury proceeded to tell the court what their understanding of the term "harm" was in that context.[8]

The court then instructed the jury as follows:

"THE COURT: If you decide that the defendants' conduct caused harm to the plaintiff under either or both of the causes of action, then you can award punitive damages. But if you did not find any harm under those two causes of action, you cannot award punitive damages . . . the way things stand, I'm going to have to nullify the punitive damages."

---

[8]     Members of the jury generally expressed the opinion that any kind of "harm" that damaged a plaintiff justified an award of punitive damages: "Mr. Collins: It means that if I think the defendant did something that would cause this person to lo[]se money . . . then I will have to award him some punitive damages." "Mr. Gonzalez: Yeah, the word 'harm' . . . it could be attributed as monetary, physical, like personal, car or property." "Mr. Valencia: I believe harm is when you make damage, when you do damage. And when you do damage, you have to pay for that."

The jury resumed deliberations. The jury foreperson then informed the court that the jury chose not to change the verdict. The court dismissed the jury and entered judgment for defendants. Plaintiffs moved for a new trial on the grounds that (1) the jury's finding that RP, Hearst and Foster acted with malice, oppression or fraud was inconsistent with the jury's finding against Aloha on the underlying causes of action; (2) one of the jurors erroneously instructed the other jurors on the law; (3) the jury instructions contained confusing black-outs and interlineations; and (4) the court improperly denied the motion for leave to amend to add Marini to the fraud cause of action.

In support of the argument that there was jury misconduct, plaintiffs submitted the declaration of juror no. 11 stating that, during deliberations, another juror "insisted" that (1) the actions of the individual defendants could not be imputed to the corporate defendants, and (2) the jury could only award a limited liability company money based on harm caused by other limited liability companies. Juror no. 11 also stated that the jury was "confused" by the crossing-out of Marini's name and the insertion of Aloha as the plaintiff "in the instructions and on the verdict form." The court denied the motion and found "that the declaration[s] of [the] juror [] is insufficient to prove jury misconduct." Plaintiffs timely appealed.[9]

---

[9] The parties do not all have equal standing to appeal the judgment. RI has no standing to challenge the court's actions during trial because its claims did not proceed to the jury. Marini only has standing to appeal the trial court's denial of leave to amend to add him to the fraud cause of action. Only Aloha has standing to challenge all of the trial court's rulings as to the verdict and jury instructions because its claims were actually submitted to the jury.

8

*CONTENTIONS*

Plaintiffs contend that the court improperly denied their motion for new trial because the verdict was inconsistent, there was juror misconduct, the jury instructions were confusing, and the court erred in denying plaintiffs leave to amend the fraud cause of action.[10]

*DISCUSSION*

1.    *The Special Verdict Findings Are Not Inconsistent*

We review a special verdict de novo to determine whether its findings are inconsistent. (*Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092 (*Zagami*).) " 'Unlike a general verdict (which merely *implies* findings on all issues in favor of the plaintiff or defendant), a special verdict presents to the jury each ultimate fact in the case. The jury must resolve all of the ultimate facts presented to it in the special verdict, so that "nothing shall remain to the court but to draw from them conclusions of law." [Citation.]' " (*Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 959-960 (*Myers*).)

"Inconsistent verdicts are ' "against the law," ' and the proper remedy is a new trial. [Citation.]" (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1344.) "If a verdict appears inconsistent, a party adversely affected should request clarification,

---

**10**    Plaintiffs also argue that a new trial should have been granted "on the basis of an inadequate award of damages." This argument fails for multiple reasons, chief among them that there was no finding of liability, (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 553), and that plaintiffs may not raise this argument for the first time on appeal. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138.)

and the court should send the jury out again to resolve the inconsistency. [Citations.]" (*Nickerson v. Stonebridge Life Ins. Co.* (2013) 219 Cal.App.4th 188, 217.) If an inconsistency remains, the court must attempt to resolve the inconsistency by construing the verdict in context. (*Ibid.*) Courts distinguish between " 'hopelessly ambiguous' " and "merely ambiguous" verdicts. (*Zagami, supra,* 160 Cal.App.4th at p. 1092.) If the verdict is " 'hopelessly ambiguous' " and the jury has been discharged, "the judgment must be reversed. [Citations.]" (*Ibid.*)

Here, the jurors were instructed that, if they decided that Hearst's, Foster's and RP's conduct caused Aloha harm, then they must decide whether those defendants engaged in that conduct with malice, oppression and fraud. Plaintiffs concede that this instruction was intended to inform the jury that they must first find a defendant liable under one of the causes of action before considering the question of whether the defendant acted with malice, fraud or oppression.[11] However, because the jury proceeded to the "punitive damages" questions without finding defendants liable for false promise or breach of fiduciary duty, plaintiffs argue that the jury, in effect, made an inconsistent finding that Aloha had been harmed by defendants' false promise and/or breach of fiduciary duty.

Unlike a general verdict from which the court can imply findings in favor of the plaintiff or defendant, a special verdict presents to the jury each ultimate fact in the case. (*Myers, supra,* 13 Cal.App.4th at pp. 959-960.) Therefore, with respect to the

---

[11] It is clear that the verdict form also should have directed the jurors not to proceed to the punitive damages questions unless they found in favor of plaintiffs on at least one of the underlying tort claims.

10

special verdict form at issue here, we cannot imply a finding of liability from the jury's finding that Hearst, Foster and RP acted with malice, oppression or fraud. The jury's finding that these defendants engaged in the conduct with malice, oppression or fraud neither adds nor detracts from the separate and dispositive finding that this conduct neither constituted a false promise nor a breach of fiduciary duty. Accordingly, the court acted properly by effectively striking the punitive damages finding and entering judgment in favor of defendants. (*Id.* at p. 960 [holding that an award of punitive damages supported only by a verdict based on breach of contract may be stricken by the trial court because, although a separate tort action was alleged, the jury did not "make the necessary factual findings for a fraud or other tort cause of action," and, therefore, "an award of punitive damages may not be sustained."])

2.      *There Was No Evidence of Jury Misconduct*

The trial court may vacate a verdict and grant a new trial on the ground that there was "[m]isconduct of the jury." (Code Civ. Proc., § 657.) "We first determine whether there was any juror misconduct. Only if we answer that question affirmatively do we consider whether the conduct was prejudicial. [Citation.]" (*People v. Collins* (2010) 49 Cal.4th 175, 242.) If the facts regarding jury deliberations are undisputed, we decide de novo whether those facts constitute jury misconduct. (*Ibid.*)

Here, the evidence of juror misconduct consisted of a juror declaration stating that the entire jury "discussed and agreed" to rule in favor of Aloha because they "were

11

told" by one juror not to consider the individual defendants' actions.[12] Plaintiffs contend that this juror's statements were contrary to the court's instructions to the jury that a limited liability company is responsible for the harm caused by wrongful conduct of its employees while acting within the scope of their employment. The court ruled that the juror declaration was "insufficient to prove jury misconduct."

Although plaintiffs contend that the proffered juror declaration established that one juror improperly recounted her own outside experience on a question of law, the declaration only states that one juror expressed an erroneous view of the law, not that she recounted her own outside experience. Furthermore, the declaration does not show that the jury intentionally agreed to disregard applicable law, but suggests only that the jury was confused and misunderstood the law. A juror's misunderstanding of the relevant law does not constitute "misconduct." (*People v. Hall* (1980) 108 Cal.App.3d 373, 380.) Therefore, the court did not err in finding that the juror declaration was insufficient to show jury misconduct.

3.      *The Jury Instructions Were Not Misleading*

"A new trial may be granted . . . for an error in law," and "[a]n erroneous or misleading instruction is an error in law. [Citation.]" (*Bristow v. Ferguson* (1981) 121 Cal.App.3d 823, 826.) "[W]hen the jury receives an improper instruction in a civil case, prejudice will generally be found only ' "[w]here it seems probable that the jury's

---

[12]      This representation is not supported by the verdict polling, which was not unanimous on any count except for the false promise count as against Hearst.

verdict may have been based on the erroneous instruction . . . . " ' [Citation.]" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.)

Plaintiffs contend that the jury could see that Marini's name had been crossed out and replaced with "Aloha Power" in certain jury instructions, and that this "imparted the unmistakable signal that the jury should not consider the claims or the conduct of the individuals." That the jury took these black-outs and interlineations as a signal to disregard defendants' liability for their agents' actions is just speculation. Although plaintiffs cite to juror no. 11's statement that the jury was "confused" by the crossing-out of Marini's name and insertion of Aloha as the plaintiff "in the instructions and on the verdict form," this statement does not indicate what conclusions the jury drew from those edits.[13]

4.     *The Court Did Not Err in Denying Plaintiffs Leave to Amend*

Plaintiffs contend that the court erred in denying their motion to amend the complaint to add Marini to the fraud cause of action because the evidence showed that Marini's omission from this cause of action was inadvertent.[14] "Leave to amend to conform to proof at trial ordinarily should be liberally granted unless the opposing party

---

[13]     We note, however, that the court could have avoided confusing the jury by printing out (or ordering counsel to print out) revised versions of the jury instructions and verdict form.

[14]     In plaintiffs' reply belief, they stray from their initial argument that Marini was inadvertently omitted from the header, and appear to concede that Marini may been intentionally left out of the header:  "*[f]or whatever reason*, Marini's name was omitted from the [] header in the Fraud Cause of Action in the Third Amended Complaint" (Emphasis added.) This concession undermines any argument that it would have been equitable for the court to grant them leave to amend.

would be prejudiced by the amendment. [Citation.] Leave to amend a complaint at trial is properly denied, however, if the proposed amendment raises new issues that the defendant has had no opportunity to defend [citation] or the material facts are undisputed and the proposed amendment would not establish a basis for liability as a matter of law. [Citation.]" (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 736.)

It is within the trial court's discretion to permit an amendment to the pleadings, and the decision is subject to reversal on appeal only for abuse of discretion. (*Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 383.) Amendment of a pleading to conform to proof is improper where substantial evidence does not support the new allegation. (*Ibid*.)

In denying plaintiffs' motion to amend at the close of trial, the trial court noted that defendants had a "strong argument" that they would be prejudiced by the proposed amendment because they had conducted trial under the assumption that Marini was not a party to the fraud cause of action. Plaintiffs now argue, to the contrary, that defendants did conduct trial on the premise that Marini was asserting fraud, and only belatedly discovered that the cause of action was not asserted on behalf of Marini. In support of this argument, plaintiffs cite to two instances during trial when certain of defendants' counsel stated that Marini was asserting fraud.[15]

---

[15]     In the first instance, it appears that RP's counsel is referring to Marini in his capacity as a representative of Aloha. However, in the second instance, Hearst and Harvest's counsel said, at the close of trial, that he believed Marini was alleging a cause of action for fraud.

14

Even if respondents would not have been prejudiced by the proposed amendment, plaintiffs must show that the court's denial of leave to amend prejudiced Marini. (*M.J. Ryan Co. v. Brown* (1934) 138 Cal.App. 176, 178 ["No judgment can be set aside for error in any matter of procedure unless after an examination of the entire record the court shall be of the opinion that the error complained of resulted in a miscarriage of justice."]) Plaintiffs argue only that "Marini was unable to have the jury consider any of his individual claims," but do not argue that the evidence produced at trial established that Marini was the victim of a false promise.

The evidence at trial showed only that, under certain circumstances described in the operating agreement, RI and Aloha, not Marini, were owed fees, commissions, and/or reimbursements, and that Aloha was the only plaintiff that owned stock in RP. Marini's only individual claim was based on defendants' alleged promise to "complete and execute an employment agreement" whereby he would be employed by RP. The evidence relied on by plaintiffs showed that Marini requested that the operating agreement provide for his employment, *or*, in the alternative, a consulting fee, and that the parties agreed to an operating agreement that provided only for a consulting agreement with Aloha for "Marini's services."[16] Because there is no substantial evidence defendants made a false promise to Marini individually, the trial court did not err in denying the posttrial motion to amend to conform to proof.

---

[16] In exhibit 39, an email from Dennis Marini to RP's attorney, Marshall Taylor, Marini stated: "I discussed this with William and we need a salary for me, as Co-Chairman or as a consulting fee to Aloha Power, or RI which ever [sic]works best. But a salary is a must when we get $ and it should be in the agreement[.]"

## DISPOSITION

The judgment from which plaintiff has appealed is affirmed.  Costs on appeal to the defendants.

***NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS***

CROSKEY, Acting P. J.

WE CONCUR:

KITCHING, J.

ALDRICH, J.